MINJAE KIM (BAR NO. 344110)
minjae.kim@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Plaintiff RUBBERECYCLE, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| RUBBERECYCLE, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    vs.<br><br>RECREATION PROJECT SERVICES, INC., a California corporation; THOMAS OAKES, an individual; and KELLY OAKES, an individual<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; RECOVERY OF PAYMENTS TO UNLICENSED CONTRACTOR [CAL. BUS. & PROF. CODE § 7031(B)]; AND CONCEALMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff RUBBERECYCLE, LLC ("Rubberecycle" or "Plaintiff") hereby files this Complaint against Defendants RECREATION PROJECT SERVICES, INC. ("RPS" or "Contractor"), THOMAS OAKES ("Mr. Oakes"), and KELLY OAKES ("Mrs. Oakes") (collectively "Defendants") for general, compensatory, and punitive damages as set forth below:

## PARTIES

1.    Plaintiff Rubberecycle is a Delaware limited liability company with its principal place of business in Lakewood, New Jersey. Rubberecycle offers a broad range of rubber products, bringing the best safety solutions to outdoor surfacing, playgrounds, and sports arenas.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

2.      Defendant RPS is a California corporation with its principal place of business in Folsom, California.  RPS is a general contractor.

3.      Defendant Mr. Oakes is the Chief Executive Officer and a Director of RPS.

4.      Defendant Mrs. Oakes is the Chief Financial Officer and a Director of RPS.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over all the causes of action alleged in this Complaint under 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and the named Defendants and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over RPS because it is registered to do business in and has its principal place of business in California.  This Court has personal jurisdiction over Mr. and Mrs. Oakes because, as officers and directors of RPS, they have purposefully availed themselves of the laws of California.  Further, upon information and belief, Mr. and Mrs. Oakes reside in California.

7.      Venue is proper in this Court because a substantial portion of the acts that are at issue in this Complaint were performed within the County of Shasta, California.

## GENERAL ALLEGATIONS

8.      On or about April 1, 2022, Rubberecycle entered into a Master Product Installation Agreement (the "Master Contract") with RPS.  Under the Master Contract, RPS undertook project management and installation services.

9.      Attached hereto as **Exhibit 1** is a true and correct copy of the Master Contract.

10.     RPS agreed, among other things, to perform its services "with that standard of care, skill and diligence normally provided in the performance of such Services."  Ex. 1, Master Contract § 1.2.

11.     RPS agreed to perform its services under the Master Contract in accordance with instructions received from Rubberecycle:

> Contractor represents and warrants that it is duly licensed to carryout its performance of the Services under this Agreement and that it will perform the Services under this Agreement and that it will perform the Services in accordance with any product or installation instructions received from Rubberecycle.  Contractor shall be in compliance with all local, state, and

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

federal laws, and regulations including DOT and applicable safety regulations while performing the Services.

Ex. 1, Master Contract § 7.

12.    RPS agreed that it "will not subcontract or otherwise delegate any of its obligations under this Agreement without the express written prior consent of Rubberecycle, which [may withhold] consent . . . in its sole discretion." Ex. 1, Master Contract § 10.2.

13.    RPS specifically agreed to install all rubber surfacing according to the standards set forth by Rubberecycle in the Master Contract, at costs that shall be quoted separately:

> c.    Installation of all rubber surfacing as specified/directed by individual project needs.  Installation to be completed at the standards set forth by Rubberecycle.
>        . . .
> d.    Install any needed sub-base (AB) rock as required.  This cost will be line itemed and quoted separately by contractor.

Ex. A to Ex. 1, Master Contract, at ¶ 3.

14.    Rubberecycle terminated the Master Contract in late 2022 under § 5.2(c).

15.    In early 2023, the parties agreed that RPS would replace three turf sports fields for the Enterprise School District in Redding, California at its Shasta Meadows, Rother, and Mistletoe Schools (collectively, the "Project").  Based on the discussions leading up to the Project as well as basic industry standards, the parties had an implicit understanding that RPS's work on the Project would comport with good workmanship and quality standards, including the workmanship terms previously set forth by the parties in the Master Contract.

16.    Via emails dated February 1 and 28, 2023, Rubberecycle and RPS arrived at pricing terms for the Project, including the price of materials and the cost to have RPS install the materials at $7.50 per square foot.  Beyond the price of materials and installation, the parties agreed on no further compensation to RPS, including any commission or similar amounts previously paid under the terminated Master Contract.

17.    Without approval from Rubberecycle and thus in violation of the terms of its contract, RPS independently engaged a subcontractor, Stites Landscape Group, Inc. ("Stites"), to install materials and perform other services at the direction and oversight of RPS.  Rubberecycle

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    has no other contract, business relationship, or agreement, with Stites.

2        18.    Stites's state contractor's license is suspended.  On information and belief, Stites's

3    contractor's license was suspended during the course of the Project as well.

4        19.    On November 20, 2023, Rubberecycle paid RPS for the Project at $7.50 per square

5    foot, totaling $136,500.00.  Rubberecycle also provided the materials it promised for the Project.

6        20.    Following installation, it quickly became clear that the Project was not completed

7    according to industry standards or the expectations of Rubberecycle.  Significantly, RPS used

8    loose stones under the trays for the Project, which created an unstable and inadequate base for the

9    fields and compromised the global integrity of the fields.  RPS failed on many other levels,

10   including closing the seams with staples instead of glue.  Overall, RPS failed to install the fields in

11   accordance with basic industry standards, good workmanship, and the promises made to

12   Rubberecycle.

13       21.    Rubberecycle will incur at least $200,000.00 to correct RPS's defective

14   installations, among other harms and damages, still accruing.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against RPS)

17       22.    Plaintiff incorporates by reference and realleges paragraphs 1 through 21 as though

18   fully set forth herein.

19       23.    Rubberecycle and RPS agreed to the terms of the Project, including the price term,

20   while RPS agreed to perform installation of the fields and related materials for the Project.

21       24.    While the parties drafted no independent agreement regarding the Project beyond

22   the exchange of e-mails setting the price term, the parties' course of conduct under the terminated

23   Master Contract, along with basic industry standards, provided additional terms on the quality of

24   work expected from RPS.

25       25.    Rubberecycle performed all, or substantially all, of its part for the Project,

26   including supplying the materials and paying RPS for the installation.

27       26.    RPS breached the parties' agreement by, among other things, failing to complete

28   the Project with that standard of care, skill, and diligence normally provided in the performance of

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

services similar to those required for the Project, and according to the parties' prior course of dealings.

27.    Rubberecycle suffered harm as a direct result of RPS's material breaches.

28.    As such, Rubberecycle has the right to recoup all of its losses.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing – Against RPS)

29.    Plaintiff incorporates by reference and realleges paragraphs 1 through 28 as though fully set forth herein.

30.    As set forth in the First Cause of Action, Rubberecycle and RPS entered into a contract to complete the Project, which included terms implied by their prior course of conduct and basic industry standards.

31.    Rubberecycle performed all, or substantially all, of the things that the Project required it to do, including supplying the materials and paying RPS to install the same.

32.    RPS breached the terms of the agreement with Rubberecycle by, among other things, failing to disclose Stites as a subcontractor for the Project.  Without this disclosure, Rubberecycle was denied its right to investigate and subsequently consent to or deny Stites as a subcontractor.

33.    Moreover, use of a subcontractor that was, on information and belief, unlicensed during the Project interfered with Rubberecycle's right to have the Project completed by a party that complied with all local, state, and federal laws and regulations.

34.    Through the above conduct, RPS acted unfairly and in bad faith.

35.    RPS's conduct substantially harmed Rubberecycle.

## THIRD CAUSE OF ACTION

### (Recovery of Payments to Unlicensed Contractor [Bus. & Prof. Code § 7031(b)] – Against RPS)

36.    Plaintiff incorporates by reference and realleges paragraphs 1 through 35 as though fully set forth herein.

37.    Rubberecycle contracted with RPS to complete the Project.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

38.    A valid contractor's license was required to complete the Project.

39.    RPS hired Stites as a subcontractor to complete the Project.

40.    On information and belief, Stites' contractor's license was suspended during the Project and remains suspended at the time of filing of this Complaint.

41.    Rubberecycle paid RPS $136,500.00 upon the completion of the Project.

42.    As a result, RPS suffered significant harm.

## FOURTH CAUSE OF ACTION

### (Concealment – Against Mr. and Mrs. Oakes)

43.    Plaintiff incorporates by reference and realleges paragraphs 1 through 42 as though fully set forth herein.

44.    Mr. and Mrs. Oakes intentionally failed to disclose to Rubberecycle that RPS retained Stites as a subcontractor to complete the Project, and that Stites did not have a valid contractor's license, a fact only known to Mr. and Mrs. Oakes and could not have been discovered or suspected by Rubberecycle.

45.    Rubberecycle did not know the concealed fact.

46.    Mr. and Mrs. Oakes intended to deceive Rubberecycle by concealing the fact.

47.    Had the omitted information been disclosed, Rubberecycle would have behaved differently.  Specifically, Rubberecycle would have investigated Stites to confirm whether it was properly licensed and/or otherwise qualified to complete the Project.

48.    Mr. and Mrs. Oakes' concealment directly harmed Rubberecycle.

49.    This conduct of Mr. and Mrs. Oakes was and is fraudulent, oppressive, and malicious, and in conscious disregard of Rubberecycle's rights.

50.    Plaintiff is thus entitled to punitive damages against Mr. and Mrs. Oakes in a sum according to proof.

## PRAYER FOR RELIEF

A.    For compensatory damages against all Defendants in an amount to be proven at trial;

/ / /

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1        B.      For punitive damages against Mr. and Mrs. Oakes in an amount to be proven at

2   trial;

3        C.      For prejudgment interest at the statutory rate;

4        D.      For allowable court costs, if any;

5        E.      For attorneys' fees and costs as allowed under the law; and,

6        F.      For such other and further relief as the Court deems just and proper.

7

8                                    **JURY DEMAND**

9        Under Fed. R. Civ. Proc. 38 and Local Rule 201, Plaintiff demands a trial by jury of all

10  issues raised by this Complaint that are triable by jury, as is its right under the Seventh

    Amendment to the Constitution of the United States and as given by statute.

11  DATED:  April 30, 2025                         SAUL EWING LLP

12

13

14                                       By:    /s/ Minjae Kim
                                                _____
15                                              MINJAE KIM
                                                minjae.kim@saul.com
16                                              Attorneys for Plaintiff RUBBERECYCLE, LLC

17

18

19

20

21

22

23

24

25

26

27

28

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

# EXHIBIT 1

## MASTER PRODUCT INSTALLATION AGREEMENT

This Master Product Installation Agreement (this "**Agreement**"), dated as of April 1, 2022 (the "**Effective Date**"), is entered into by and between Rubberecycle, LLC, a Delaware limited liability company having its offices at 1985 Rutgers University Blvd, Lakewood, New Jersey 08701 ("**Rubberecycle**"), and Recreation Project Services, Inc., having its principal place of business at 7121 Pine View Drive, Folsom, CA 95630 ("**Contractor**").

**WHEREAS**, Rubberecycle is in the business of selling and installing safe rubber playground surfaces and other related rubber products; and

**WHEREAS**, Contractor is in the business of providing recreation and playground installation services; and

**WHEREAS**, Rubberecycle desires to hire Contractor to perform certain installation services on Rubberecycle's behalf as an independent contractor of Rubberecycle for specific jobs as assigned.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound hereby, agree as follows:

1.    **Contractor Services**. Rubberecycle hereby engages Contractor to provide, and Contractor hereby agrees to provide, the services as set forth on **Exhibit A** hereto (the "**Services**") to Rubberecycle on the terms and conditions set out in this Agreement. The Parties may from time to time enter into a Statement of Work under this Agreement in a form similar to that set forth in **Exhibit C** to further describe specific Services to be provided by Contractor.

1.1    Additional or changed statements of Contractor's duties may be entered into from time to time by the Parties. Contractor shall comply with all reasonable directions and requests of the Rubberecycle in performing the Services.

1.2    Contractor shall communicate and report directly to Keith Sacks who shall coordinate and oversee Contractor's performance of Services. Contractor agrees to perform the Services pursuant to this Agreement with that standard of care, skill and diligence normally provided by a professional person in the performance of such Services.

1.3    Unless otherwise agreed to in writing between the Parties, Contractor is responsible for providing all vehicles, equipment, supplies, and licenses necessary to perform the Services described by this Agreement.  This includes, but is not limited to vehicles, heavy equipment, and other equipment or supplies the Contractor believes are necessary for performance of its duties, business licenses, and other licenses necessary to perform the Services.

2.    **Relationship of Parties**.

1

2.1. **Independent Contractor**. Contractor is an independent contractor pursuant to this Agreement, and Contractor shall be solely responsible for any and all costs or expenses that it may incur in the performance of its obligations under this Agreement. Nothing in this Agreement creates any agency, joint venture, partnership, or other form of joint enterprise, employment, or fiduciary relationship between the parties. Contractor does not have any express or implied right or authority to assume or create any obligations on behalf of or in the name of Rubberecycle and its parents or affiliates or to bind Rubberecycle or any of its parents and affiliates to any contract, agreement, or undertaking with any customer or any other third party. The Contractor has sole control over its operations.

2.2. **Personnel**. All personnel of Contractor are employees or contractors of Contractor and not of Rubberecycle. Contractor is solely responsible for, at its own expense: (a) compensating all of its employees and contractors for any services rendered in connection with the performance of Contractor's obligations under this Agreement; (b) covering its employees under any applicable social benefit laws (including workers' compensation and state disability insurance); and (c) making any payroll deductions and contributions that may be required by applicable law or otherwise with respect to Contractor's employees and contractors.

3. **Compensation**. Rubberecycle shall pay Contractor for the Services as set forth in Exhibit B or as stated in any applicable Statement of Work ("**Compensation**") provided that such Services have been performed to the reasonable satisfaction and installation standards of Rubberecycle. All costs and expenses incurred by Contractor in the performance of Services shall be borne solely by Contractor, unless otherwise agreed to in writing between the Parties.

3.1 Contractor shall send to Rubberecycle an invoice for all such Compensation after the completion of the Services. Rubberecycle shall pay to Contractor all undisputed invoice amounts upon the later of (a) net 30 days from the date of Rubberecycle's receipt of invoice or (b) net ten (10) days from Rubberecycle's receipt of payment for the Services from its Customer. Contractor shall be responsible for paying all taxes and charges imposed by any governmental authority on amounts received by it under this **Section 3**.

4. **Non-Exclusive**. Nothing in this Agreement constitutes Contractor as Rubberecycle's exclusive Contractor.

5. **Term; Termination**.

5.1 **Term**. The term of this Agreement commences on the Effective Date and shall continue for an initial period of one (1) year ("**Initial Term**"). Thereafter, this Agreement shall automatically renew for additional one (1) year periods (each additional year referred to as a "**Renewal Term**") unless and until earlier terminated as provided under **Section 5.2**.

5.2 **Termination Rights**. Rubberecycle may terminate this Agreement by providing written notice to Contractor: (a) if Contractor breaches any provision of this Agreement, and either the breach cannot be cured or, if the breach can be cured, it is not cured by Contractor within thirty (30) days after Contractor's receipt of Rubberecycle's written notice of such breach; (b) if Contractor becomes insolvent or files, or has filed against it, a petition for voluntary or

involuntary bankruptcy or pursuant to any other insolvency law, makes or seeks to make a general assignment for the benefit of its creditors or applies for, or consents to, the appointment of a trustee, receiver or custodian for a substantial part of its property, or is generally unable to pay its debts as they become due; or (c) upon at least thirty (30) days prior written notice to Contractor for Rubberecycle's convenience at any time.

6.    **Confidentiality**.

6.1    **Definition**. Each party acknowledges that during the Term it (the "**Receiving Party**") shall have access to and become acquainted with trade secrets, proprietary information and confidential information belonging to the other party (the "**Disclosing Party**") that is not generally known to the public, including information concerning business plans, pricing, contracts, customer lists, trade secrets, and the terms and conditions of this Agreement, in any format whatsoever (including oral, written, electronic or any other form or medium) (collectively, "**Confidential Information**"); *provided, however*, that Confidential Information shall not include information that: (a) is or becomes generally available to the public other than as a result of a disclosure by the Receiving Party in violation of this Agreement; (b) is or becomes available to the Receiving Party on a non-confidential basis prior to its disclosure to the Receiving Party by the Disclosing Party or any of its representatives; or (c) becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party or any of its representatives that is not subject to any duty of confidentiality with respect to such information.

6.2    **Permitted Disclosure**. Notwithstanding any other provision hereof, the Receiving Party may disclose Confidential Information: (a) upon the request, demand, or order of any governmental authority; (b) to the extent compelled by legal process or required or requested pursuant to subpoena, interrogatories or other discovery requests; or (c) to the extent necessary in connection with the exercise of any remedy hereunder; *provided, however*, that the Receiving Party shall notify the Disclosing Party of the proposed disclosure as far in advance of such disclosure as practicable and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Disclosing Party, when and if available.

6.3    **Confidentiality; Use Restrictions**. Neither the Receiving Party nor any of its representatives shall, directly or indirectly, disclose or use (other than solely for the purpose of performing this Agreement) at any time, including use for personal, commercial or proprietary advantage or profit, any trade secret or the Confidential Information of the Disclosing Party. The Receiving Party shall, and shall cause its representatives to, take all appropriate steps to keep confidential all Confidential Information of the Disclosing Party (including not disclosing it to any other persons) and to protect it against disclosure, misuse, espionage, loss and theft. Upon the written request of the Disclosing Party at any time, the Receiving Party shall return any Confidential Information to the Disclosing Party or destroy it and certify such destruction to the Disclosing Party in writing.

7.    **Representations and Warranties**. Contractor represents and warrants that it is duly licensed to carryout its performance of the Services under this Agreement and that it will perform the Services in accordance with any product or installation instructions received from Rubberecycle. Contractor shall be in compliance with all local, state, and federal laws and regulations including DOT and applicable safety regulations while performing the Services. Each

3

party represents and warrants to the other party that it has the full right, power and authority to enter into this Agreement and to perform its obligations hereunder; and when executed and delivered by each of Rubberecycle and Contractor, this Agreement shall constitute the legal, valid and binding obligation of such party.

8.    **Insurance / Indemnification.**  Contractor will carry general liability, automobile liability, and employer's liability insurance in the amount of $2,000,000 each.  Rubberecycle will accept $1,000,000 primary automobile liability policy limits, if Contractor also carries a minimum of $1,000,000 in Umbrella Insurance limits.  Rubberecycle is to be named an "Additional Insured" on Contractor's general liability insurance policy.  Contractor shall provide workers' compensation insurance in amounts necessary to satisfy statutory limits to all of its employees.  Contractor agrees to provide Rubberecycle with evidence of such coverage or any waiver of coverage that may be permitted by state law.  Contractor will provide proof of insurance to Rubberecycle within ten (10) business days upon entering into this Agreement and as requested by Rubberecycle from time to time.  Contractor shall defend, indemnify and hold harmless Rubberecycle, its agents, and employees from and against any and all damages, claims, and expenses arising out of or resulting from directly or indirectly the work or Services conducted by Contractor and its agents or employees in providing the Services or arising from Contractor's negligence, or breach of this Agreement.

9.    **LIMITATION OF LIABILITY. NOTWITHSTANDING ANYTHING ELSE CONTAINED HEREIN TO THE CONTRARY AND TO THE MAXIMUM EXTENT PERMITTTED BY APPLICABLE LAW, IN NO EVENT SHALL: (A) EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY OTHER PERSON FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, PUNITIVE, OR OTHER SIMILAR DAMAGES, OR ATTORNEYS' FEES OR COURT COSTS ARISING IN ANY MANNER PURSUANT TO OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING ANY LOST SALES, PROFITS OR REVENUES OR ECONOMIC LOSSES, (EVEN IF SUCH PARTY IS MADE AWARE OF THE POTENTIAL FOR SUCH DAMAGES).**

10.    **Miscellaneous**.

10.1    **Entire Agreement; Amendment**. This Agreement, including the schedules hereto, which are incorporated herein by reference and made a part hereof, constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter. No amendment to this Agreement shall be effective unless it is in writing and signed by both parties.

10.2    **Subcontracting**. Contractor will not subcontract or otherwise delegate any of its obligations under this Agreement without the express prior written consent of Rubberecycle, which consent may be withheld in its sole discretion.

10.3    **Severability**. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such term or provision shall be deemed to be severed herefrom in such jurisdiction, provided that such invalidity, illegality or unenforceability does not affect any

other term or provision of this Agreement in any jurisdiction or invalidate or render unenforceable such term or provision in any other jurisdiction.

      10.4   **Waiver**. No waiver by either party of any of the provisions hereof shall be effective unless expressly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right, remedy or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

      10.5   **Successors and Assigns**. This Agreement is binding on and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Contractor shall not be permitted to assign any of its rights or delegate any of its obligations under this Agreement, and any purported assignment or delegation in violation hereof shall be null and void.

      10.6   **Legal Matters**. This Agreement shall be governed by and construed in accordance with the internal laws of the Commonwealth of Pennsylvania without giving effect to any choice or conflict of law provision or rule of any jurisdiction. Each party agrees that any action, litigation or proceeding of any kind whatsoever against the other party in any way arising from or relating to this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the Western District of Pennsylvania or the Allegheny County Court of Common Pleas, and any appellate court therefrom. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. **EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.**

      10.7   **Counterparts**. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[SIGNATURE LINES FOLLOW ON NEXT PAGE]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**RUBBERECYCLE**:

Rubberecycle, LLC

By: _____

Name: _____

Title: _____

**CONTRACTOR**:

Recreation Project Services, Inc.

By: _____

Name: _Thomas Oakes_

Title: _President_

## EXHIBIT A

## CONTRACTOR SERVICES

**1. Add a Description of the Contractor Services to Be Provided Under This Agreement**

**2. Contractor must at all times hold correct and valid license under the California State Licensing Board to perform all work under this agreement. If at any time Contractor's license is revoked, suspended, cancelled or rendered invalid, Contractor must inform Rubberecycle within 24 hours.**

**3. Project Management and Installation Services**

     **a.** Coordinate receiving shipments of rubber products and materials from a Rubberecycle designated storage facility or deliveries at job sites when appropriate.

     **b.** Manage inventory of all west coast materials.

     **c.** Installation of all rubber surfacing as specified/directed by individual project needs. Installation to be completed at the standards set forth by Rubberecycle.

     **d.** Provide any necessary warranty work and repairs.

     **e.** Install any needed sub-base (AB) rock as required. This cost will be line itemed and quoted separately by contractor.

     **f.** Complete any requested or required site work. Including but not limited to concrete work, drainage, earth moving, electrical, plumbing, and/or any play pit creation. This cost will be line itemed and quoted separately by contractor.

**EXHIBIT B**

**CONTRACTOR COMPENSATION**

**1. Rubberecycle shall compensate Contractor $3,000/month and as agreed to between Rubberecycle and Contractor in written Statement of Work.**

**2. Rubberecycle shall compensate Contractor $0.70/sqft. on all projects and as agreed to between Rubberecycle and Contractor in written Statement of Work.**

**3. Contractor will manage compensation to sub-contractor(s). RubbeRecycle shall make all installation payments to Contractor. Contractor to handle necessary disbursements.**

EXHIBIT C

FORM

# Statement of Work

SOW Number: [NUMBER]

This Statement of Work ("**SOW**"), adopts and incorporates by reference the terms and conditions of the Master Product Installation Agreement dated as of April 1, 2022 by and between Rubberecycle, LLC, ("**Rubberecycle**"), and Recreation Project Services, Inc., ("**Contractor**") ("**Master Agreement**"), as it may be amended from time to time. This SOW is effective beginning on [DATE] [("**Effective Date**")] and will remain in effect until unless earlier terminated in accordance with the Master Agreement. Transactions performed under this SOW will be conducted in accordance with and be subject to the terms and conditions of this SOW, the Master Agreement, and any applicable purchase order ("**PO**"). Capitalized terms used but not defined in this SOW shall have the meanings set out in the Master Agreement.

1.    Scope of Work. [ADD PROJECT SUMMARY]

2.    Project Location: [ADD PROJECT LOCATION]

3.    Special Instructions: The relevant milestones, completion dates, and terms associated with this SOW are as follows:

| Line Item | Task / Additional Terms | Completion Date |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

4.    Compensation to Contractor. Contactor shall be paid the following Compensation for the Services provided under this SOW.

| Item | US Dollars |
|---|---|
| | |
| | |
| | |
| | |
| Total: | |

5.    <u>Other SOW-Specific Terms and Conditions</u>.  [SOW-SPECIFIC TERMS AND CONDITIONS]

**IN WITNESS WHEREOF**, the parties hereto have executed this SOW as of the Effective Date.

**RUBBERECYCLE**:

Rubberecycle, LLC

By: _____
Name: _____
Title: _____

**CONTRACTOR**:

Recreation Project Services, Inc.

By: _____
Name:   Thomas Oakes
Title:     President